IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GARY L. JONES | * | |
|     Plaintiff | | |
|     v. | * | CIVIL ACTION NOS. AW-05-1536 |
| | | AW-05-1592 |
| MARY ANN SAAR | * | |
| KATHLEEN GREEN | | |
| VICTORIA BURKARD | * | |
| MR. WEISENGOFF[1] | | |
| P. ZIOLKOWSKI | * | |
| J. MISTER | | |
|     Defendants. | * | |
| | *** | |

**<u>MEMORANDUM</u>**

I.

When alleging a constitutional failure-to-protect claim under the Eighth Amendment, a prisoner must present evidence that a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).

Also, a claim of excessive force raised by a prison inmate against correctional officers, such as that alleged in the case sub judice, involves review of both objective and subjective elements. *See Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996). The core judicial inquiry when analyzing the subjective element is to review "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

---

[1] The docket shall be amended to reflect the correct spelling of the name of this Defendant.

and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986). The objective element is analyzed to determine whether the officers' actions were harmful enough to offend contemporary standards of decency. *See Hudson*, 503 U.S. at 8. Factors which are pertinent to this inquiry include the extent of injuries suffered by the inmate, the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by prison staff, and any efforts on the part of staff to temper the severity of their response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. While the prisoner's injury need not be significant to violate the Eighth Amendment, something more than a *de minimis* injury is required in order to prove that excessive force was used. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind").[2]

II.

In this consolidated matter, Plaintiff alleges that in late 2004 and early 2005, he wrote corrections administrators about safety concerns arising out of threats from other inmates and correctional officers, in particular Eastern Correctional Institution Annex ("ECI-A") inmate Tyrone Gray and Eastern Correctional Institution ("ECI") Lieutenant Drury. He complains that Dfendants failed to protect him from retaliatory actions, resulting in his being stabbed on April 27, 2005, by

---

[2]  When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (ii) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (ii) did the inmate seek medical care; (iii) were any injuries documented in the medical records generated shortly after the incident; and (iv) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident. *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley*, 134 F.3d at 634; *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997); and *Norman*, 25 F.3d at 1264.

ECI inmate Derrick Dirton. Plaintiff further complains that although he was acting in self-defense and injured as a result of Dirton's assault, Officers Ziolkowski and Mister sprayed him in the face with pepper spray.[3]

On January 13, 2006, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Paper No. 27. The Motion remains unopposed as of the within signature date. The case may be determined on the pleadings. Oral hearing is unnecessary. *See* Local Rule 105.6. (D. Md. 2004).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997) (*citing Anderson,* 477 U.S. at 255). If the non-movant fails to make a sufficient showing on an element on which he has the ultimate burden of proof, summary judgment is appropriate because there is no genuine issue of material fact due to the complete failure of proof on an essential element of the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

---

[3]    In supplemental allegations Plaintiff alleges that staff has retaliated against him for the filing of this action by: (i) placing him in solitary confinement; (ii) withholding his outgoing mail and otherwise tampering with his correspondence; (iii) denying him food, pre-release status, a parole hearing, and diminution credits; and (iv) placing him in a dirty disciplinary segregation cell on the same tier as Derrick Dirton and across from a gang member and friend of Dirton's who sent him threatening messages. *See* Paper Nos. 8 in Civil Action No. AW-05-1536 and Paper No. 11 in Civil Action No. AW-05-1592.

23 (1986). Further, the non-moving party may not rest upon matters pleaded in his complaint, but must, by factual affidavit or the like, respond to the motion to show that there is a genuine issue for trial.[4] *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(e).

### III.

Defendants assert that Plaintiff was transferred to ECI-A on December 1, 2004. ECI-A Facility Administrator Burkhard acknowledges receiving numerous letters of complaints from Plaintiff and maintains that she met with him on several occasions in an attempt to address his grievances by contacting the administrative remedy coordinator, the medical department, and the Medical Contract Monitor. Ms. Burkhard also reviewed and attempted to resolve Plaintiff's claim that Lt. Drury had threatened him. Ms. Burkhard found no basis for Plaintiff's claim against Lt. Drury.

Plaintiff was transferred to ECI's medium security compound on February 22, 2005, and placed on administrative segregation by Lt. Dean because Plaintiff reported that he had been threatened by ECI-A inmate Tyrone Gray. A case management team recommended that Plaintiff be transferred to another minimum security institution, and on March 7, 2005, plaintiff was moved from administrative segregation status on ECI Housing Unit 4, to the same status on Housing Unit 5. On March 9, 2005, Plaintiff was advised that he would be housed in general population until his transfer to another minimum security institution. At that time Plaintiff did not indicate that he had other enemies. As a result, he was assigned to general population on ECI's East Compound.

---

[4] In the context of an excessive force claim, not every discrepancy creates a triable issue of fact. *See Sigman v. Town of Chapel Hill*, 161 F.3d 782, 787 (4th Cir. 1998).

On April 5, 2005, Plaintiff was placed on administrative segregation status as a result of a Division of Correction Internal Investigation Unit's ("IIU") investigation regarding correspondence he had sent to another inmate's daughter.  Plaintiff complained that the assignment was retaliatory in nature.  He was advised, in part, that his reclassification was done within correctional guidelines and that his assignment was due to an ongoing IIU investigation.

On April 27, 2005, ECI Officers Ziolkowski and Mister responded to a signal 10-10 in the C-Tier day room of Housing Unit 5 for a fight in progress.  Both officers observed inmate Dirton and Plaintiff fighting in the day room and ordered the inmates to stop fighting or pepper spray would be used .  The inmates continued to fight.  Officer Ziolkowski gave the inmates another order to stop fighting and, as Dirton and Plaintiff continued to fight, Ziolkowski sprayed them with two short bursts of pepper spray.  Officer Mister discharged several short bursts of pepper spray towards both inmates through the fence of the day room.  Dirton ran to the day room showers and dropped something from his right hand, an object later determined to be a homemade weapon   Plaintiff walked onto the day room steps.  Other officers arrived to assist.  Ziolkowski ordered Plaintiff to lay face down on the floor and he was then handcuffed by Officer Nelson.  Inmate Dirton was handcuffed in the same manner.

Both inmates were escorted to the medical department.  Plaintiff was found to have a laceration on the top of his head, a superficial laceration to his left shoulder, and a superficial abrasion on his right hand.  The wounds were cleaned and dressed and he was released to correctional officers.  Inmate Dirton had no injuries.

Plaintiff and Dirton were cited with infractions. Dirton pled guilty to several rule infractions and received a cumulative 210 days on disciplinary segregation.  Plaintiff was found not guilty of

all charges and was returned to general population on May 4, 2005. He was mandatorily released from ECI on November 4, 2005.

There is no dispute that Plaintiff complained of threats by Lt. Drury and was attacked by inmate Derrick Dirton on April 27, 2005. Plaintiff fails, however, to project evidence of Eighth Amendment failure-to-protect violations related to his complaints and the April, 2005, assault.

First, while Plaintiff did complain about his fear of Lt. Drury and voiced his concerns about being transferred to ECI, where Drury was employed, his allegations were not arbitrarily dismissed. Prison administrators investigated Plaintiff's claims regarding Drury and found them to be without factual basis. Nonetheless, when Plaintiff was reassigned to ECI general population in March of 2005, he was placed in the ECI East Compound, an area where Drury was not working.[5]

The record does not show that Plaintiff raised any direct concerns to ECI staff about Derrick Dirton prior to the assault or that any of his multiple complaints to staff would place them on notice that he was subject to risk of harm from Dirton. A prison setting is, at best, a tense environment. It is sometimes explosive and is always potentially dangerous. Confrontations and fights among prisoners are an all-too-common event. While the assault against Plaintiff was unfortunate, there is no evidence that Defendants had knowledge of a risk of harm to Plaintiff and wilfully disregarded that risk, resulting in his assault.

Plaintiff also fails to project evidence that the force applied to him by Officers Ziolkowski and Mister was excessive under Eighth Amendment standards. There is no dispute that while inmate Derrick Dirton may have initiated the assault, both inmates were observed fighting in the day room.

---

[5] Plaintiff was transferred from ECI-A to ECI because he had reported that he was threatened by ECI-A inmate Tyrone Gray.

They were warned that pepper spray would be applied if they did not cease brawling, but ignored repeated orders to stop fighting. Officer Ziolkowski maintains that he applied two short bursts of peppery spray to Dirton and Plaintiff. Officer Mister affirms that he applied the pepper spray through the day room fence. Both inmates stopped fighting and were handcuffed and escorted to the medical department.

Even accepting Plaintiff's version of the events as true, as the Court must, the injuries he claims to have suffered as a result of the use of force are *de minimis*. The evidentiary support for Plaintiff's claims is reduced to his own personal opinion that the amount of force used was excessive. This subjective belief is undercut by the evidentiary materials filed in this case, *i.e.*, use of force reports, declarations, and medical notes, and is insufficient to sustain his claims.[6]

IV.

For the aforementioned reasons, the Court finds that Plaintiff has failed to support his Eighth Amendment failure-to-protect and excessive force allegations. Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, shall be granted. A separate Order follows.

Date: February 21, 2005                         /s/
                                                Alexander Williams Jr.
                                                United States District Judge

---

[6] As already indicated, Plaintiff raised a number of supplemental retaliation claims in letters filed with the Court. *See infra* at 2, n. 2. Defendants assert that these allegations present nothing more than conclusory claims of retaliation and are not sufficiently pled. Plaintiff does not refute these arguments. The Court finds that Plaintiff has failed to provide any factual support for these naked assertions or alleged any harm or injury from Defendants' alleged retaliatory actions. Therefore, these claims are subject to dismissal.